**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JESUS VARGAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 22 C 47 |
| | ) | |
| STONE PARK POLICE OFFICERS | ) | |
| ABEL GUARDIOLA #10, EMANUEL | ) | |
| BRAMBILA #42, C GRIFFIN #17, | ) | |
| NUMANAJ #7, SARABIA #16, | ) | |
| JOHNSON #206, CHIEF PAVINI #1, | ) | |
| UNKNOWN STONE PARK POLICE | ) | |
| OFFICERS, MAYOR BENIAMINO | ) | |
| MAZZULLA OF STONE PARK, | ) | |
| and the VILLAGE OF STONE | ) | |
| PARK, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Plaintiff Jesus Vargas was pulled over by Stone Park police officers conducting

traffic stops on four different occasions, specifically on February 10, 2020, June 6, 2020,

August 1, 2020, and April 8, 2021. On each occasion, a Stone Park police officer pulled

over Vargas for a traffic stop, asked him to step out of the car, and patted him down.

On three of the stops, officers also arrested Vargas and impounded his car.

Vargas has filed an action under 42 U.S.C. § 1983 and Illinois law. He has sued Mayor

Beniamino Mazzulla, the Village of Stone Park, and a number of Stone Park police

officers, including Abel Guardiola, Emmanuel Brambila, Clifford Griffin, Albi Numanaj,

Ricardo Sarabia, Brian Johnson, and Christopher Pavini.

The case was stayed for an extended period while related state court proceedings involving certain of the charges against Vargas were ongoing. Once those proceedings were completed, this lawsuit resumed, and the parties conducted discovery. Defendants have moved for summary judgment, and Vargas has filed a cross-motion for summary judgment. For the reasons described below, the Court grants defendants' motion for summary judgment and denies Vargas's motion for summary judgment.

## Background

The factual record the Court considers when ruling on a motion for summary judgment is framed by the parties' Local Rule 56.1 statements and responses, although the Court retains discretion to "consider other materials in the record" where appropriate. Fed. R. Civ. P. 56(c)(3).

Jesus Vargas is twenty-seven years old and resides in Chicago with his parents, girlfriend, and daughter. He owns a small part-time business called Vargas Legal LLP and also works with Alliance, a crisis prevention and response organization. Since 2018, Vargas has had a fair share of run-ins with police officers in Chicago, Stone Park, and Franklin Park, twenty to thirty encounters by his own account. Vargas Dep. at 48:1-12.

The claims Vargas asserts in this lawsuit involve his interactions with Stone Park police officers on February 10, 2020, June 6, 2020, August 1, 2020, and April 8, 2021. Unfortunately, Vargas's complaint lumps these separate incidents together for purposes of asserting his claims. By way of example, he asserts a single count alleging unlawful seizure and false arrest under 42 U.S.C. § 1983 that covers *all four* separate incidents.

*See* Am. Compl., "Claim 1." This runs afoul of Federal Rule of Civil Procedure 10(b), which says that "[i]f doing so would promote clarity"—which absolutely is the case here—"each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). Contrary to the requirements of this rule, Vargas has asserted in a single count four separate section 1983–Fourth Amendment claims arising from four separate incidents. Vargas does the same with each count in his amended complaint, which are broken down only by subject matter, as follows:

- Count 1 – Unlawful seizure/false arrest/failure to intervene, 42 U.S.C. § 1983;

- Count 2 – Unlawful detention, 42 U.S.C. § 1983;

- Count 3 – Conspiracy, 42 U.S.C. § 1983;

- Count 4 – Due process/conspiracy/fabricated evidence/abuse of process, 42 U.S.C. § 1983;

- Count 5 – Malicious prosecution, state law;

- Count 6 – Conspiracy to commit malicious prosecution, state law;

- Count 7 – False imprisonment, state law;

- Count 8 – Intentional infliction of emotional distress, state law;

- Count 9 – Indemnification under 745 Ill. Comp. Stat. 10/9-102.

Vargas's noncompliance with Rule 10(b) has complicated the Court's review of his claims. But the defendants did not challenge the amended complaint on this basis, so the Court proceeds ahead.

3

**A.     February 10, 2020**

Sometime after 11:30 p.m. on February 10, 2020, Vargas was leaving the parking lot of Fiesta's Night Club and Restaurant in Stone Park and driving towards Lake Street to go back home.  Because it was cold outside, his car windows were fogged up.  After pulling out of Fiesta's parking lot, officers Guardiola and Griffin turned on their patrol car's emergency lights and pulled Vargas over around the 1500 block of Mannheim Road.  The officers told him that his headlights were off.  Vargas disputes this and states that he recalls that his headlights were on because he could see both of his lights hit the concrete when he turned on his parked car.  Vargas Dep. at 54:1-8.

Once the officers took Vargas's license and proof of insurance and went back to their patrol car to perform their checks, Vargas turned on his car's stereo system to play some music.  When the officers returned to Vargas's vehicle, Officer Griffin says he smelled an odor of cannabis coming from the vehicle and saw open alcohol containers and drug paraphernalia, specifically a vape pen, in the car.  At this point, the officers asked Vargas to step out of the car and conducted a pat down.  The officers say they discovered, in one of Vargas's pockets, a small bag containing around 30 grams of marijuana.  They placed Vargas in handcuffs and searched the rest of the car, finding marijuana residue in the center console and Jack Daniel's box with a single bottle in it, a contention that Vargas disputes.

Vargas disputes this narrative.  He states that the bag of marijuana and drug paraphernalia were inside the center console of his car and not in plain view or on his person.  He also states that he does not remember there being any alcohol or marijuana residue in his car and that the Jack Daniel's box just had garbage in it.

4

Because the officers found a vape pen and a bag of marijuana, they arrested Vargas and impounded his car. Vargas was issued four citations for violations of Stone Park ordinances, including possession of cannabis, possession of drug paraphernalia, not having both of his headlights on, and operating a sound system heard outside of vehicle.

**B.    June 6, 2020**

On June 6, 2020, Vargas was driving home around 2:00 a.m. He was listening to what officers claim was "loud" music. Officer Brambila observed Vargas turn right into a gas station, exit the gas station, and turn back southbound on Mannheim Road, in what the officer suspected was an effort to avoid a red light, a prohibited action under Illinois law. Officer Brambila conducted a traffic stop. When he approached Vargas's vehicle, Brambila says, he observed a vape pen in plain view. He called for a back-up unit. At some point, Officer Sarabia arrived at the scene of the traffic stop. Vargas's vehicle was searched, and a vape pen was found and confiscated. The parties' submissions are not clear on who exactly was involved in the search of the vehicle or whether it took place before or after Officer Sarabia arrived.

Officer Brambila issued citations to Vargas for violations of ordinances involving possession of drug paraphernalia, playing loud music, and disobeying a traffic control device. Vargas was not taken into custody.

**C.    August 1, 2020**

On August 1, 2020, Officer Brambila is said to have received a call about a vehicle playing loud music driving around a community event occurring on that day. Officer Brambila observed the vehicle driving around the event. Vargas admits to

5

driving around the event a few times that day, in the area near 35th Street and Lemoyne Street.

At some point, Officer Brambila and Chief Pavini pulled Vargas over. Officer Brambila saw that Vargas had a folding pocketknife on his belt buckle. They asked Vargas to exit the vehicle. Officer Brambila performed a pat down and retrieved the knife. Vargas was arrested and transported to the Stone Park police department, and his car was impounded. He was criminally charged with unlawful use of a weapon and criminal damage to property. The latter charge involved an incident that occurred at the police station and does not appear to be challenged in this lawsuit. On or about September 11, 2023, a jury found Vargas not guilty on these charges. *See* Def.'s Ex. 9, *People of the State of Illinois v. Jesus Vargas*, No. 20400606901.

**D.    April 8, 2021**

The final stop at issue in this case took place on April 8, 2021 around 9:00 p.m., when Vargas drove near 1800 North 37th Avenue in Stone Park, Illinois, close to where Mayor Mazzulla's home is located. Mazzulla allegedly saw a red vehicle drive by his home two times, blaring loud music, with the driver shouting profanities, including "Fuck Mazzulla." Vargas disputes that this occurred. Mazzulla called the police, and officers arrived at the scene. Mazzulla's description of the vehicle matched Vargas's car. Officer Numanaj arrested Vargas and charged him with disorderly conduct. He also searched Vargas's vehicle during the arrest. Vargas was ultimately found guilty of disorderly conduct after a bench trial. The Illinois Appellate Court affirmed Vargas's conviction. *See* Defs.' Ex. 12.

**E.    Administrative hearings for the traffic citations**

6

Vargas was required to report to a Village of Stone Park adjudication hearing for the ordinance violation citations.  This appears to be an administrative hearing; hearings occur at a monthly adjudication court held at the Stone Park police department.  Defs.' Stat. of Facts ¶¶ 65-66.

Vargas first appeared at a hearing on August 19, 2020.  The judge, however, rescheduled the hearing to October 21, 2020 because he wanted to address all of Vargas's pending citations at once, but not all the police officers involved in the separate incidents were present.  Pl.'s Ex. 5, Audio of Proceedings from Aug. 19, 2020.

On October 21, 2020, however, Vargas failed to appear.  The judge therefore entered ex parte judgments on the following ordinance violations: possession of cannabis, possession of drug paraphernalia, driving with one headlight, and playing loud music related to the February 10, 2020 traffic stop/arrest; possession of drug paraphernalia and playing loud music related to the June 6, 2020 traffic stop; and disorderly conduct related to the August 1, 2020 arrest.  *See* Defs.' Ex. 13; Pl.'s Ex. 6, Audio of Proceedings from Oct. 21, 2020.

After his motion to vacate the ex parte judgments was denied, Vargas requested a trial on the ordinance violations.  This hearing was held on April 21, 2021, but the proceedings ultimately concluded without a full hearing because Vargas abruptly left before the hearing could be completed.  Vargas says this was because he felt threatened by Officer Griffin's hostility when Vargas was cross-examining him and noted that the officer seemed to move his hand towards his gun.  The audio recording of the hearing suggests that multiple people in the courtroom began to yell.

Because Vargas left the hearing, the presiding judge entered findings of liability

on all of Vargas's citations that had been issued on February 10, 2020 and on a disorderly conduct citation from August 1, 2020.  *See* Defs.' Ex 15; Pl.'s Ex. 7, Audio of Proceedings from April 21, 2020.

The judge amended Vargas's citations from February 10, 2020 to reflect the correct ordinance numbers on the citations.  *See* Defs.' Ex. 14.  At a point when Vargas was still in the hearing room, the judge dismissed the citations Vargas had been issued on June 6, 2020 because Officer Brambila was not present at the hearing and thus could not testify about the incident.  *See* Defs.' Ex. 15.

### Discussion

Defendants have moved for summary judgment on all of Vargas's claims. Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party is then required to identify material facts that demonstrate a genuine dispute for trial.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013).  But when a litigant fails to respond to an argument, the litigant effectively forfeits the point and concedes the opposing party's contention.  *Bonte v.*

8

*U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

Defendants make the following arguments in support of summary judgment:

- There was probable cause for the February 10, 2020 stop and arrest; in addition, the administrative judgments bar Vargas's claims regarding this incident under *Heck v. Humphrey*, 512 U.S. 477 (1994), and by way of issue preclusion.

- There was probable cause for the June 6, 2020 stop.

- There was probable cause for the August 1, 2020 stop.

- There was probable cause for the April 8, 2021 stop and arrest, and Vargas's claims arising from that incident are barred under *Heck* and due to issue preclusion.

- Vargas's claims for conspiracy and failure to intervene are barred due to the lack of an underlying constitutional violation.

- Vargas's due process claims in count 4 are barred on various grounds.

- Qualified immunity bars all of Vargas's federal constitutional claims.

- Vargas's state law malicious prosecution claims are barred by the existence of probable cause and, for the February 2020 and June 2020 incidents, due to the absence of a favorable termination of the state proceedings.

- Probable cause precludes Vargas's state law false imprisonment claims.

- Vargas's claims for intentional infliction of emotional distress fail because there was no "extreme and outrageous" conduct as required.

- One defendant, Johnson, had no direct involvement in any of the

9

challenged stops or arrests.

## A.    *Heck* doctrine

First, defendants argue that the doctrine of *Heck v. Humphrey*, 512 U.S. 477

(1994), bars Vargas's Fourth Amendment claims regarding the February 10, 2020 stop

and the April 8, 2021 arrest.  Under *Heck*, a "district court must dismiss a § 1983 action

if a judgment in favor of the plaintiff in that § 1983 action would necessarily imply the

invalidity of his criminal conviction or sentence."  *Helman v. Duhaime*, 742 F.3d 760,

762 (7th Cir. 2014) (internal citations omitted); *see Heck*, 512 U.S. at 486.  In other

words, the *Heck* doctrine prevents a plaintiff from making "allegations that are

inconsistent with the conviction's having been valid" and claims that are "incompatible

with [a plaintiff's] conviction."  *Gilbert v. Cook,* 512 F.3d 899, 902 (7th Cir.2008); *Okoro*

*v. Callaghan,* 324 F.3d 488, 490 (7th Cir.2003); *Stone v. Village of Broadview*, No. 13 C

9316, 2014 WL 3397222, at *3 (N.D. Ill. 2014).

The proceedings in which Vargas was found guilty on the February 2020 and

April 2021 citations were administrative proceedings regarding city ordinance violations.

The Seventh Circuit has reserved judgment on "whether an administrative proceeding

or a finding of a violation of a city ordinance triggers the *Heck* bar."  *Justice v. Town of*

*Cicero*, 577 F.3d 768, 773 (7th Cir. 2009).  In two decisions, the Seventh Circuit

hesitated to apply the *Heck* doctrine to judgments entered in administrative

proceedings.  These two cases, however, involved incomplete records with sparse

information about the earlier proceedings.  *See Kuhn v. Goodlow,* 678 F.3d 552, 555

(7th Cir. 2012); *Justice,* 577 F.3d at 773.  Those circumstances are not present here.

The final judgments issued by the Stone Park administrative court regarding

Vargas's ordinance violations are documented in the record. An audio recording of the administrative hearings also exists. These circumstances distinguish Vargas's case from *Kuhn* and *Justice,* and thus those cases do not pose a barrier against applying the *Heck* doctrine in this case.

The Court agrees with other courts in this district and circuit courts that have applied *Heck* to judgments from administrative proceedings on city ordinance violations. *See Stone*, 2014 WL 3397222, at *4 (collecting cases from other circuits, including the Third, Fifth, Sixth, and Tenth, that have extended *Heck* to judgments involving city ordinance violations).

### 1.    February 10, 2020

Vargas was found guilty on all four citations from February 10, specifically, for possessing cannabis, possessing drug paraphernalia, not having both of his headlights on, and playing loud music. In this case, however, Vargas contends that the police lacked reasonable suspicion and probable cause to stop him on February 10.[1] The stop

---

[1] Vargas's Fourth Amendment claims regarding the February 10 incident—though pleaded confusingly in his complaint—conceivably might be understood to include a contention that the traffic stop was inappropriately prolonged by the officers' discovery (or improper search of Vargas's vehicle that led to the discovery) of the alleged drug paraphernalia. But when faced with defendants' motion for summary judgment, Vargas does not argue his claims regarding the February 10 stop that way, at least not that the Court can discern: he argues only that the headlight-based stop was infirm. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 2-3. The Court concludes that Vargas has forfeited any claim for unlawful seizure in this regard. And though his summary judgment response alludes (in passing) to improper search(es), *see id.* at 3, neither count 1 nor any other count asserts such a claim. Specifically, count 1 is entitled "unlawful seizure/false arrest/failure to intervene" and refers only to the seizure of Vargas's *person*, *see* Am. Compl. ¶¶ 40-43; Count 2 is entitled "unlawful detention" and likewise refers only to the seizure of his person, *id.* ¶¶ 47-48; count 3 similarly refers only to "seiz[ing] *Plaintiff* multiple times," *id.* ¶ 54 (emphasis added); and none of the other counts purport to assert a claim based on unlawful search or seizure of Vargas's property.

was made, as the Court understands it, by the officers' observation that Vargas only had one headlight on.  And the continued detention was due to the officers' observation of drug paraphernalia.  The underlying facts about both the headlights are disputed:  the officers say they saw only one headlight on, whereas Vargas says that both headlights were working and illuminated.  The underlying facts regarding possession of the vape pen are undisputed (Vargas agrees it was in his car), though the circumstances regarding its discovery are disputed.

Vargas's account regarding the headlights is inconsistent with his conviction on the citation for that ordinance violation.  A Fourth Amendment claim is not always inconsistent with a later conviction:  a claim of excessive force, for example, does not contradict a conviction for the underlying charge, and one can certainly imagine a situation in which a stop or arrest without a sufficient basis ends up in a valid conviction based on evidence obtained independent of the stop or arrest.  *See generally VanGilder v. Baker*, 435 F.3d 689, 691-92 (7th Cir. 2006); *Ocasio v. Turner*, 19 F. Supp. 3d 841, 848-49 (N.D. Ind. 2014) (collecting cases).  But in this situation, there *is* a contradiction: Vargas's contention that both headlights were on is inconsistent with the administrative judge's finding that they were both not functioning, and there is no indication that any post-stop evidence was used.  Thus, Vargas's constitutional claims arising from this stop are barred under *Heck*.  *See Gilbert,* 512 F.3d at 902; *Okoro,* 324 F.3d at 490 (*Heck* precludes plaintiff from making allegations that are inconsistent from conviction).

With regard to the February 2020 drug paraphernalia and marijuana possession citations, Vargas was likewise convicted, and his challenge to probable cause is similarly inconsistent with those convictions.  Vargas's only answer to this is that the

convictions were based on ordinances that did not exist (the actual situation may be that the tickets cited the wrong ordinances—indeed, as indicated, the administrative judge amended the citations to reflect the correct ordinances).  But his contention that these convictions are "void," *see* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 4, runs headlong into *Heck*:  it is an attempt to attack those convictions.

### 2.    April 8, 2021

Similarly, the *Heck* doctrine bars Vargas from challenging his arrest for disorderly conduct on April 8, 2021.  Any contention by Vargas that the officers lacked probable cause—i.e., that they did not observe him driving around Mazzulla's house in a disruptive manner—directly contradicts his conviction on that offense.  His Fourth Amendment-based claims regarding this incident are therefore barred by *Heck*.

Because Vargas's Fourth Amendment claims regarding the February 2020 and April 2021 incidents are barred by *Heck*, the Court need not address defendants' argument that Vargas's challenges to the February 10, 2020 stop and the April 8, 2021 arrest are also barred by the doctrine of issue preclusion (collateral estoppel).

### B.    Unlawful seizure/false arrest/unlawful detention (counts 1 and 2)

The Court next addresses Vargas's Fourth Amendment claims in counts 1 and 2 that are not *Heck*-barred.  Vargas argues that police officers illegally seized and detained him on June 6, 2020 and August 1, 2020.  The defendants respond that the officers involved in each stop had probable cause to seize Vargas.

Because a traffic stop is considered a seizure short of an arrest, police must have reasonable suspicion that the driver committed a traffic violation to conduct a stop, but they need not have probable cause.  *See United States v. Cole*, 21 F.4th 421, 427

(7th Cir. 2021). The stop is limited in scope to what is reasonably needed to investigate the claimed traffic violation, "unless the officer has reasonable suspicion of other criminal activity to independently justify prolonging the stop." *See id*. at 427-48.

An arrest, however, requires probable cause to believe that the arrestee has committed or is in the process of committing an offense. *See Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) (Probable cause concerns "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."). Probable cause involves a common-sense inquiry. *See Lee*, 127 F.4th at 673. It "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. . . . So long as the totality of the circumstances . . . reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000) (internal citations omitted).

Because probable cause is a higher threshold than reasonable suspicion, if the defendants can show probable cause, they have also succeeded in establishing reasonable suspicion.

### 1. June 6, 2020

On June 6, 2020, Officer Brambila pulled Vargas over for avoiding a red light. During the stop, Officer Brambila says he saw drug paraphernalia in plain view in Vargas's vehicle. He asked Vargas to step out of the car. At some point, the vehicle was searched. Vargas ultimately was issued citations for possession of drug

paraphernalia and playing loud music. But because Officer Brambila did not attend the citation hearing, the administrative judge dismissed these citations. Pl.'s Ex. 6, Audio of Proceedings from Oct. 21, 2020.

Vargas admitted during his deposition that "it could have happened that he crossed a red light" and that "it [was] safe to say" he was playing music that day—though he did not admit it was loud. Vargas Dep. at 88-90. He thus effectively admitted—or at least has not genuinely disputed—that he committed the red-light violation. Given this admission, there is no genuine dispute of fact relating to the officers' reasonable suspicion to stop Vargas on June 6.

The stop did not end there. It was prolonged based on Brambila's claimed observation of drug paraphernalia in plain view, a claim that Vargas disputes. But nowhere in Vargas's summary judgment briefs (or even in his Rule 56.1 submissions) does he assert any challenge to the prolongation of the stop. He has therefore waived or forfeited any claim along these lines. *See Bonte*, 624 F.3d at 466.

The Court concludes that Vargas has not shown the existence of a genuine factual dispute regarding the sufficiency of the basis for the June 6, 2020 stop. The defendants thus are entitled to summary judgment on Vargas's Fourth Amendment claims relating to the June 6 incident.

### 2. August 1, 2020

Vargas alleges in his complaint that Officers Brambila and Griffin and Chief Pavini lacked probable cause to detain and arrest him on August 1, 2020. *See* Am. Compl. ¶¶ 26, 41, 42. During his deposition, Vargas testified that he drove around the area around the community event where people had gathered, "three, four times

maybe." Vargas Dep. at 98:3-8. When asked whether he would have been playing music, Vargas responded that "Yeah, I was playing music, most likely. I am always playing music." *Id.* at 97:14-17. He also admitted to having a folding knife on his belt buckle and another knife in a nook at the bottom of his car door. *Id.* at 104:3-16.

Officer Griffin told Vargas that he stopped him because of his loud music. Officer Brambila and Chief Pavini had observed Vargas driving around with loud music, and "[v]illage officials felt there was a concern." Griffin Dep. at 57:2-12. It is undisputed that driving while operating an amplified sound system is a violation of a Stone Park ordinance.

Following the stop, the defendants contend, Vargas was arguing with and yelling at Chief Pavini. *Id.* at 61, 64; Brambila Dep. at 58-59. Vargas admits that he got "into his feelings" during the stop and says that "his demeanor changed for sure from being chill to like what is going on." Vargas Dep. at 102. At some point, Officer Brambila saw that Vargas had a pocketknife on him and says that he retrieved it "for [his] safety." Brambila Dep. at 61:3-12. Officer Griffin testified that Officer Brambila had "advised [Officer Griffin] that [Vargas] opened his knife resting in his lap." Griffin Dep. 63:1-5.

After retrieving the knife, the officers arrested Vargas. He was charged with disorderly conduct for the music and unlawful use of a weapon.

In his response to the defendants' summary judgment motion, Vargas offers no argument to the effect that probable cause to arrest was lacking, aside from a contention that under *Heck*, the finding of not guilty precludes the defendants from arguing that probable cause was lacking. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6. That is a ridiculous contention; it's nowhere close to what *Heck* says or even implies.

16

Given the absence of an argument on probable cause, Vargas has forfeited the point. *See Bonte*, 624 F.3d at 466. Even in his own summary judgment reply brief, Vargas does not discuss the evidence regarding probable cause or its absence; he seems to repeat his *Heck* argument; says that defendants cited the wrong ordinances in their citations (which also does not bear on probable cause); and says that "there can be no probable cause for violations that were dismissed in Plaintiff's favor," which confuses probable cause with a determination of guilt. *See* Pl. Reply at 5. Vargas's complete failure in his briefs to address the sufficiency of the basis for the stop and arrest amounts to a forfeiture of these points.

**C.    Failure to intervene (count 1); conspiracy to deprive constitutional rights (count 3); due process conspiracy (count 4)**

Vargas alleges that although other officers were present during his seizures, none of them intervened to prevent the unlawful actions that other officers allegedly committed against Vargas (count 1). He also alleges that the defendants worked in concert to conspire against him and violate his Fourth Amendment and due process rights in response to his civil rights complaint in 2019 against Stone Park and three Stone Park officers, including defendants Numanaj and Sarabia (counts 3 and 4). *See* Defs.' Ex. 16.

Claims for failure to intervene and conspiracy depend on the occurrence of a constitutional violation. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017); *Watkins v. Phillips*, No. 22 C 7341, 2025 WL 919612, at *10 (N.D. Ill. Mar. 26, 2025); *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

For the reasons discussed earlier, Vargas has no viable constitutional claims

17

relating to the February 2020, June 2020, August 2020, and April 2021 incidents, so his claims for failure to intervene and conspiracy arising from these matters fail.

In sum, the defendants are entitled to summary judgment on Vargas's failure to intervene and conspiracy claims.

**D. Fabricated evidence (count 4)**

In support of his fabricated evidence claim (count 4), which Vargas's amended complaint identifies as a claim for violation of due process, he makes a general allegation that the defendants made false statements and withheld exculpatory information. Am. Compl. ¶ 64. But his complaint identifies no supposedly fabricated evidence outside of the allegedly false accounts on which the defendant officers relied to stop or arrest him, and no evidence that he contends the defendants withheld. *See id.* ¶¶ 8-38.

Defendants' primary argument in support of summary judgment is that there is no basis for a due process claim along these lines. Specifically, they cite *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017), for the proposition that "if the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." Defs.' Mem. in Support of Mot. for Summ. J. at 8. Any section 1983 claim "for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound[s] in the Fourth Amendment." *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019). The defendants argue that the existence of probable cause defeats these claims to the extent they are viewed as Fourth Amendment claims.

In his response, Vargas appears to acknowledge that his fabricated evidence

claims arise, if at all, only under the Fourth Amendment. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 4 ("The statement of law is correct that all § 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment.") (internal quotation marks omitted). But he identifies no evidence that his claims were fabricated; he appears to rely solely on the officers' accounts of the respective stops and arrest as fabricated. As such, the "fabricated evidence" claims are indistinguishable from Vargas's remaining Fourth Amendment claims. The claims are therefore infirm for the reasons already discussed. The defendants are entitled to summary judgment on count 4.

## E.    Abuse of process (count 4)

Count 4 also contains a reference to abuse of process. But Vargas has identified no basis for raising an "abuse of process" claim as a federal constitutional claim, which is the type of claim he asserts in count 4.

If the Court considers this as a reference to a possible state law claim for abuse of process, "[u]nder Illinois law, '[t]he only elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings.'" *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 757 (7th Cir. 2015) (citation and emphasis omitted). Vargas's counsel makes no reference to any such claim in the response brief. The claim has therefore been waived. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018).

**F.    State law claims**

**1.    Malicious prosecution (count 5)**

Vargas argues that defendants maliciously prosecuted him by bringing legal proceedings against him that were unsupported by probable cause.  To prevail on a malicious prosecution claim, Vargas must show that "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff."  *Swick v. Liautaud,* 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996); *see also Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009).  In seeking summary judgment, defendants argue that "probable cause existed at the time of Plaintiff's interactions with Defendants," Defs.' Mem. in Support of Mot. for Summ. J. at 11, and that on some of the charges, the underlying proceedings were not terminated in Vargas's favor.

**a.    February 10, 2020 and April 8, 2021**

Vargas's malicious prosecution challenges from the February 10, 2020 and April 8, 2021 charges founder on the favorable termination requirement.  Vargas was convicted on the citations arising from those incidents, and the convictions have not been vacated, or, for that matter, even challenged in state court.  The Court dismisses count 5 to the extent it is based on these charges.

**b.    June 6, 2020**

As indicated earlier, Officer Brambila issued citations to Vargas on June 6, 2020 for violations of ordinances involving possession of drug paraphernalia, playing loud

music, and disobeying a traffic control device. The proceedings on the citations were terminated in Vargas's favor, as the citations were ultimately dismissed.

But the defendants further argue that probable cause precludes Vargas's malicious prosecution claim based on the June 6 citations. Vargas's only argument on this point, both in his summary judgment response brief and in his reply on his cross-motion, is that the dismissal of the citations shows the absence of probable cause. Speaking charitably, that's not a viable argument; the law is clear that the standard for probable cause is a good deal lower than the standard for conviction. *See Purvis v. Oest*, 614 F.3d 713, 723 (7th Cir. 2010) ("[T]he evidence required to establish probable cause is considerably less than that required to sustain a criminal conviction.").

The Court has ruled, in connection with Vargas's Fourth Amendment claims, that there is no genuine dispute regarding the existence of probable cause for the traffic control device (red light) citation. Regarding the drug paraphernalia citation, Vargas has admitted that he had a vape pen in his vehicle. *See* Vargas Dep. at 90-91. The parties dispute whether it was in plain view, as Brambila stated, or in the center console, as Vargas stated. But that bears only on whether the vape pen was properly seized, not on the viability of the malicious prosecution claim, where the issue is probable cause. Vargas's admitted possession of the vape pen is sufficient to establish the absence of a genuine factual dispute on that point.

This leaves only the loud music citation. On that, although Vargas did not affirmatively admit that the music he was playing was loud, he did state that "it [was] safe to say" that he was playing music on June 6, 2020. Vargas Dep. at 89:21-24, 89:1. One searches his Rule 56.1 statements and briefs in vain for a denial of Brambila's

contention on the point that the music was loud enough to constitute a violation of a Stone Park ordinance. Vargas cites no evidence at all. Thus, there is no genuine factual dispute on this point, at least not one that the Court can discern from the parties' submissions.

### c. August 1, 2020

As discussed earlier, with regard to Vargas's Fourth Amendment claims, Vargas has forfeited on defendants' contention that there was probable cause supporting the August 1, 2020 charges. Again, Vargas's only argument is that the not guilty findings establish the absence of probable cause. *See, e.g.*, Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6; Pl.'s Reply at 6. That's plainly wrong. Because Vargas has not advanced any evidence or viable argument contrary to the defendants' contention that probable cause existed, he cannot prevail on a claim for malicious prosecution arising from the August 1 charges. *Swick,* 169 Ill. 2d at 512, 662 N.E.2d at 1242 (the absence of probable cause is a necessary element for a malicious prosecution claim).

For these reasons, the defendants are entitled to summary judgment on Vargas's malicious prosecution claims.

### 2. Conspiracy to commit malicious prosecution (count 6)

Vargas also alleges that defendants conspired to maliciously prosecute, retaliate, and harass him due to his 2019 civil rights complaint against the police department and the Village of Stone Park. To prove his conspiracy claim under Illinois law, Vargas must establish that an agreement existed "between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means" and at least one of the co-conspirators committed at least one tortious "in furtherance of the

agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007); *see also Brown v. City of Chicago*, 709 F. Supp. 3d 558, 574 (N.D. Ill. 2023) ("The necessary elements of civil conspiracy include: (1) an agreement between two or more persons; (2) to participate in an *unlawful act*, or a lawful act in an *unlawful manner*; (3) an injury caused by an unlawful overt act performed by one of the parties; and (4) the overt act was done pursuant to and in furtherance of the common scheme.")

Vargas's claim for conspiracy to commit malicious prosecution fails for the same reasons his underlying claim for malicious prosecution fails:  there is no genuine dispute that the officers had probable cause for each the stops and arrests in question.  The defendants are entitled to summary judgment on count 6 of Vargas's amended complaint.

### 3.    False imprisonment (count 7)

Vargas claims that defendants falsely imprisoned him by detaining him on multiple occasions without probable cause.  "[T]o state a cause of action for false imprisonment, a plaintiff must allege that his or her personal liberty was unreasonably or unlawfully restrained against his or her will and that the defendant caused or procured the restraint."  *Gibbons v. OSF Healthcare Sys.*, 2022 IL App (2d) 210038, ¶ 30, 196 N.E.3d 1077, 1085..  Because "[p]robable cause is an absolute bar to a claim of false imprisonment," Vargas's false imprisonment claim fails.

### 4.    Intentional infliction of emotional distress (IIED) (count 8)

Next, defendants ask the Court to grant summary judgment regarding Vargas's IIED claims.  Vargas states that the officers' conduct during the four traffic stops at issue

was extreme and outrageous and caused him severe emotional distress and anguish. Am. Compl. ¶¶ 88-95.

To sustain an IIED claim under Illinois law, a plaintiff must establish that "(1) the defendant's conduct was truly extreme and outrageous, (2) the defendant either intended to inflict emotional distress or knew there was at least a high probability that he would cause severe emotional distress, and (3) the conduct in fact caused severe emotional distress." *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010). The defendants argue that Vargas has not pointed to evidence that would permit a reasonable jury to find extreme and outrageous conduct. *See* Defs.' Mem. in Support of Mot. for Summ. J. at 12-13. In his response, Vargas's only argument referring to this point consists of the following sentences, which the Court quotes verbatim:

> The Defendants summarize the state malicious prosecution, false imprisonment and emotion [sic] distress claims and claim probable case [sic]. . . . The false arrest would only apply to the August 1, 2020 incident for the purposes of summary judgment for Plaintiff and the emotional distress stands as the conduct of Defendants and these multiple arrests, vehicle impoundments, issuing citations that do not exist [sic] and fabricating evidence and grounds to stop Plaintiff, cumulatively constitute extreme and outrageous conduct or there is at lease [sic]a genuine issue of material fact for that claim to proceed to trial for all Plaintiff's counts [sic].

Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6.

The second, run-on sentence just quoted is entirely conclusory; it references no supporting evidence or caselaw. Whatever the defendants' claimed motives, and even if probable cause was lacking, these were otherwise ordinary stops and arrests—at least on the record that is before the Court. Among other things, there is no contention that any of the defendants physically mistreated or verbally abused Vargas, nor has he

24

pointed to any actual evidence (as opposed to a conclusory contention) that would permit an inference that Vargas was targeted in some way. In short, Vargas has offered no basis that would permit a reasonable jury to find that the defendants' conduct was "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Stokes*, 599 F.3d at 626 (internal quotation marks and citation omitted). The defendants are therefore entitled to summary judgment on count 8.

**G.    Indemnification claim (count 9)**

Vargas asserts a claim for indemnification against the Village of Stone Park premised on section 9-102 of the Illinois Tort Immunity Act. *See* 745 Ill. Comp. Stat. 10/9-102. The Court dismisses this claim because there are no claims remaining against the individual defendants on which indemnification would apply.

**I.    Vargas's cross-motion for summary judgment**

Vargas filed a cross-motion for summary judgment. At this point, all of his claims have been dismissed. That aside, Vargas's cross-motion was entirely lacking in merit. He seems to take the position that the dismissal of some charges establishes the absence of probable cause in the first place. That is just plain wrong, as the Court has discussed. Vargas cites no other viable basis for summary judgment in his favor.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion for summary judgment [dkt. no. 70] and denies plaintiff's cross-motion for summary judgment [dkt. no. 74]. The Court directs the Clerk to enter judgment stating: Plaintiff's claims are

dismissed with prejudice.

Date:  May 29, 2025

_____
MATTHEW F. KENNELLY
United States District Judge